■ ADRIENNE FOSTER-STURRUP et al., Respondents, v PAIGE LONG, M.D., et al., Appellants. [945 NYS2d 246]—

Order, Supreme Court, Bronx County (Julia I. Rodriguez, J.), entered July 7, 2011, which, insofar as appealed from as limited by the briefs, denied defendants' cross motion for summary judgment dismissing the complaint, unanimously reversed, on the law, without costs, and the cross motion granted. The Clerk is directed to enter judgment in favor of defendants dismissing the complaint.

Plaintiff Adrienne Foster-Sturrup saw defendant Dr. Long, an obstetrician/gynecologist, on March 14, 2003, because she was experiencing pain and tenderness in her breasts and abdomen, and was concerned she might be pregnant. Foster-Sturrup did not experience any vaginal bleeding or nausea prior to her appointment, and took two home-pregnancy tests before seeing Dr. Long, both of which came back negative. She told Dr. Long that she had an "abdominal pregnancy" in 1991, had "lost the baby," and had a history of infertility. Foster-Sturrup further informed Dr. Long that she had not missed her previous

menstrual period. Foster-Sturrup requested a blood test to determine if she was pregnant because, in the past, the pregnancy would show up only through a blood test and not a urine test.

Dr. Long did not perform a blood test. After an examination and review of Foster-Sturrup's medical history, Dr. Long diagnosed her with an infection and prescribed an antibiotic, Flagyl, to be taken for seven days. Foster-Sturrup filled the prescription the following day and, according to her deposition testimony, did not experience any more pain once she started taking the antibiotic.

On March 23, 2003, Foster-Sturrup went to the emergency room because she was experiencing abdominal pain. She advised the medical staff that her last menstrual period had been on February 22, 2003. The treating doctors performed a blood test, the result of which indicated that Foster-Sturrup was in the very beginning stages of a pregnancy, with a gestational age of approximately four weeks. The treating doctors also performed an ultrasound and saw fluid in the abdomen, but did not see anything in the uterus. The doctors surmised that Foster-Sturrup had an ectopic pregnancy, but based on the ultrasound, were unable to determine its exact location. Foster-Sturrup was taken to the operating room for an exploratory laparotomy which revealed that the ectopic pregnancy had implanted on her appendix. Foster-Sturrup's appendix had burst and the doctors performed an appendectomy.

Plaintiffs commenced this action alleging medical malpractice based on defendants' failure to diagnose Foster-Sturrup's ectopic pregnancy; specifically, Dr. Long's failure to administer a blood test or an ultrasound on March 14. Defendants moved for summary judgment dismissing the complaint. The motion court denied defendants' motion, finding that plaintiffs' expert's affidavit raised an issue of fact whether defendants departed from the accepted medical standard of care. We now reverse.

"To sustain a cause of action for medical malpractice, a plaintiff must prove two essential elements: (1) a deviation or departure from accepted practice, and (2) evidence that such departure was a proximate cause of plaintiff's injury" (*Frye v Montefiore Med. Ctr.*, 70 AD3d 15, 24 [2009]). Generally, "the opinion of a qualified expert that a plaintiff's injuries were caused by a deviation from relevant industry standards would preclude a grant of summary judgment in favor of the defendants" (*Diaz v New York Downtown Hosp.*, 99 NY2d 542, 544 [2002]). Additionally, a plaintiff's expert's opinion "must demonstrate 'the requisite nexus between the malpractice allegedly

committed' and the harm suffered" (*Dallas-Stephenson v Waisman*, 39 AD3d 303, 307 [2007] [citation omitted]). However, if "the expert's ultimate assertions are speculative or unsupported by any evidentiary foundation . . . the opinion should be given no probative force and is insufficient to withstand summary judgment" (*Diaz* at 544).

Defendants established their prima facie entitlement to summary judgment by submitting their expert's affirmation which explained that the treatment of Foster-Sturrup was within and in accordance with good and accepted practice and was not the proximate cause of Foster-Sturrup's injury. Defendants' expert, Dr. D'Amico, affirmed that he reviewed Foster-Sturrup's deposition testimony, medical records from the emergency room and operative report from her exploratory laparotomy and appendectomy. Dr. D'Amico noted that the blood test administered by the hospital on March 23 revealed a human chorionic gonadotropin (hCG) (the "pregnancy hormone") level of 436 units, which indicates a very early pregnancy. Based on that number, Dr. D'Amico estimated that Foster-Sturrup's hCG level nine days earlier when she saw Dr. Long was between 0 and 20. Dr. D'Amico averred that even if Dr. Long had administered a blood pregnancy test on March 14, based on such a low hCG count, the standard of care would not have required an ultrasound for another four weeks since the embryo would not be visible at such an early stage. An ultrasound done on March 14 would not have shown an ectopic pregnancy because an ultrasound, according to Dr. D'Amico, "is reliable when there is a visualization of a yolk sac or embryo which equates to an hCG value of at least 1,500 to 2,000 units," a number well above the hCG level of 0 to 20.

Further, Dr. D'Amico stated that a blood pregnancy test would not have determined the location of the pregnancy or indicated that the pregnancy was ectopic. Lastly, D'Amico stated that Flagyl is an appropriate antibiotic to treat a gynecological infection, even in a pregnant woman, and that it did not contribute to either the adhesion of the ectopic pregnancy to the appendix, or to the appendiceal rupture.

In opposition, plaintiffs failed to raise an issue of fact. "Plaintiff's expert's affirmation was conclusory and did not adequately address the prima facie showing in the detailed affirmation of [defendants'] expert" (*Matter of Joseph v City of New York*, 74 AD3d 440, 440 [2010]; *see Giampa v Marvin L. Shelton, M.D., P.C.*, 67 AD3d 439 [2009]). Dr. Douglas Phillips, plaintiffs' expert, submitted an affidavit opining that a blood pregnancy test and ultrasound would have led to an earlier diagnosis of an

ectopic pregnancy, but did not explain how this could occur since Foster-Sturrup was only a few weeks pregnant. He failed to contest Dr. D'Amico's statement that at such an early stage of the pregnancy an ultrasound would not have been warranted for another four weeks. His affidavit also is insufficient because it did not address or respond to Dr. D'Amico's statements that even if a blood pregnancy test had been administered, it would not have revealed the location of the pregnancy.

Dr. Phillips averred that Dr. Long should have considered the possibility of an ectopic pregnancy, performed an additional blood test, which could have been "useful" in determining the location of the pregnancy, and then prescribed Methotrexate to treat an ectopic pregnancy and avoid surgery. However, Dr. Phillips' conclusion is difficult to reconcile with his acknowledgment that Foster-Sturrup did not experience any of the classic symptoms associated with an ectopic pregnancy, namely, amenorrhea and vaginal bleeding, prior to her appointment with Dr. Long.

Even if we accept plaintiffs' argument that Dr. Long's failure to administer a blood pregnancy test was a departure from accepted medical standards, defendants' summary judgment cross motion still should have been granted because plaintiffs failed to raise an issue of fact as to causation. Dr. Phillips' opinion that Methotrexate should have been prescribed did not address whether or how Methotrexate would have been used to treat the specific ectopic pregnancy in this case, which had adhered to Foster-Sturrup's appendix (*see Matter of Joseph*, 74 AD3d at 441). Further, Dr. Phillips failed to address the fact that the treating doctors in the emergency room, nine days after the alleged malpractice occurred, still were unable to determine the location of the pregnancy by performing a blood pregnancy test and an ultrasound. They were only able to locate it through exploratory surgery and the removal of Foster-Sturrup's burst appendix. Concur—Tom, J.P., Catterson, Richter, Abdus-Salaam and Román, JJ.