Tom, J.P.
(dissenting in part). I respectfully disagree with the majority’s holding and would dismiss plaintiffs claim of medical malpractice against defendants Hospital for Special Surgery and its physicians (collectively, HSS).
Flaintiff had a history of severe cervical disc disease going back to 1989. In December 1994, plaintiff had surgery at HSS to address multilevel cervical stenosis with myelopathy and radiculopathy, a condition that existed for a period of time which caused plaintiff continuous weakness of his upper extremities including left shoulder. The surgery consisted of a decompressive laminoplasty at C3-C7, bone graft reconstruction at C3-C6, and halo vest application.
In March of 2002, plaintiff returned to HSS with complaints of pain in his lower back and left leg. He underwent a course of *91 steroid injections. Plaintiff continued to complain of cervical and lumbar discomfort and worsening of the preexisting weakness in his right upper extremity. On April 11, 2003, an MRI revealed a narrowing of the spinal canal and the neural foramen with disc protrusions. In June 2004, plaintiff returned to HSS with continuing complaints of progressive right shoulder weakness, increased neck pain and decreased balance.
On October 1, 2004, plaintiff saw defendant Dr. Peter Frelinghuysen, an orthopaedic surgeon at HSS, who noted that he was “very concerned” that there was only a small chance that surgery would improve plaintiffs condition. Dr. Frelinghuysen testified that, in or about December 2004, after he reviewed plaintiffs film with Dr. Frederico Girardi, another HSS orthopaedic surgeon, he decided that surgery was not an option for treating plaintiff because it would expose plaintiff to myriad risks, and not improve his condition. It was also Dr. Girardi’s opinion that, given plaintiffs extensive spinal disease and the prospect of low improvement, the risk of surgery including quadriplegia or even death, was clearly not warranted. Moreover, “because of a phenomenon called rebound myelopathy, an operation . . . with the kind of degeneration of the spinal cord [plaintiff] had, risk[ed] creating symptoms in the hands or feet.”
In February 2005, plaintiff began treatment at defendant New York University Medical Center Hospital for Joint Disease (HJD). Dr. Anthony Petrizzo of HJD examined plaintiff on February 11, 2005, finding severe upper extremity atrophy, with deltoid strength at 1/5, and 2/5 strength to the biceps. Plaintiffs MRI was reviewed and it was determined that surgery was not indicated. Dr. Petrizzo testified that the overwhelming majority of patients with cervical myelopathy do not regain function after decompression surgery. Since surgery carried serious risks and would likely not benefit the patient, conservative management with physical therapy and pain management would be more appropriate. Plaintiff was referred for pain management and to HJD’s neurology and hand clinics, with the notation that “no further surgery for the cervical spine [was] indicated.”
In July, 2005, plaintiff saw orthopaedic surgeon Dr. Andrew Hecht of Mt. Sinai where plaintiff later underwent a two stage revision cervical laminectomy with fusion. After surgery, Dr. Hecht observed that he did not “see a substantial neurologic improvement on [his] objective testing, but the patient does feel subjectively like he is improving.” In October 2006, plaintiff returned to HJD again complaining of continued lack of *92 strength in upper extremity and numbness and pain in the right arm and hand. Electronic tests revealed that plaintiffs cervical condition was significantly the same as in 2005 which supported Dr. Hechf s postsurgical findings.
Plaintiff commenced this action against HSS and HJD claiming, in essence, that defendant hospitals were negligent in declining to timely perform the surgery he sought, particularly, that their delay caused him to sustain injury that otherwise might have been avoided.
The motion court granted defendant HJD’s motion for summary judgment and denied HSS’s motion for the same relief. As to HSS, the court noted that the motion was clearly untimely, without explanation. However, disregarding the untimeliness of HSS’s motion, the court held that issues of fact precluded HSS from being granted summary judgment. The court noted that Dr. Girardi at HSS “explained clearly that he believed that the cord was so damaged that the surgery would not have improved anything” and Dr. Hecht, who performed the surgery, acknowledged that plaintiff did not have any objective improvement (2012 NY Slip Op 31849[U], *7 [2012]). Nevertheless, the court observed that plaintiffs expert Dr. Michael J. Murphy clearly opined that the surgery was necessary, not so much to improve plaintiffs’s condition, but to prevent it from worsening. Thus, there were issues of fact raised “as to the advisability of surgery . . . sufficient to defeat the motion for summary judgment on the merits” {id. at *9).
The majority concludes that plaintiff failed to demonstrate any injury sustained as a result of the delay in surgery and upholds the dismissal of the complaint as against HJD on this ground — a result in which I wholly concur. However, for reasons bereft of any sound basis in law or judicial policy, it refuses, primarily on procedural grounds, to apply the same reasoning to dismiss the complaint as against HSS.
On the merits, discounting the supporting opinion of plaintiffs expert as conclusory, the majority finds that the evidence demonstrates that plaintiff suffered no injury as a result of HJD’s February 2005 determination that surgical intervention was unwarranted. Logically, if plaintiff did not sustain injury as a result of HJD’s February 2005 decision, it follows that he did not sustain injury as a result of the similar December 2004 determination, approximately two months earlier, by HSS physicians to forgo surgery, especially in light of plaintiffs long history of cervical disc disease.
*93 While defendants have not raised the question of whether the complaint is actionable, the issue should nevertheless be decided preliminarily. As this Court recently noted in Williams v New York City Tr. Auth. (108 AD3d 403, 404 [1st Dept 2013]),
“It is well settled that ‘the duty owed by one member of society to another is a legal issue for the courts’ (Eiseman v State of New York, 70 NY2d 175, 187 [1987]). Only after the extent of a duty has been established as a matter of law may a jury resolve — as a question of fact — whether a particular defendant has breached that duty with respect to a particular plaintiff’ (citing Kimmell v Schaefer, 89 NY2d 257, 263 [1996]).
Before this matter may proceed to trial, it will be necessary to decide, as a matter of law, whether a doctor has a duty to perform a surgical procedure requested by a patient despite, in the professional opinion of the doctor, the high risk and absence of benefit that such surgery entails.
This is an aberrant medical malpractice action brought against two hospitals for declining to provide additional surgical treatment to plaintiff because, in their estimation, further surgical intervention presented an unjustifiable risk of quadriplegia or death and offered little to no prospect of relieving his symptomatology. Plaintiff subsequently underwent the subject procedure at nonparty Mt. Sinai Hospital in December 2005, with no objective sign of improvement in physical function after over 10 months, according to his surgeon’s report and tests taken at HJD’s neurology clinic in October 2006. Plaintiff cites no precedent for imposing liability under these circumstances, and no comparable New York case has been located. To lend legal support to plaintiffs theory would place the surgeon in an impossible situation — perform a procedure that is deemed to be ill-advised, taking into consideration the individual physician’s experience and the available hospital facilities, and be subject to liability for any aggravation of the patient’s condition or decline to operate and face liability for refusing to assume the substantial risk that surgery entails. The course adopted by plaintiff of locating a medical team possessing the requisite skills at a hospital equipped with the appropriate facilities represents a seemingly optimal outcome which, as a matter of policy, should not be compromised by the threat of litigation.
The majority sustained the action as against HSS as a result of the hospital’s submission of its summary judgment motion *94 after the date set by the trial court pursuant to CPLR 3212 (a). The majority concludes that summary disposition is precluded by the Court of Appeals’ decision in Brill v City of New York (2 NY3d 648 [2004]), without reference to the judicial policy espoused in the opinion. Because of the particular procedural posture of this matter, the order directing that it proceed to trial is ultimately futile, but application of the majority’s rationale will unnecessarily burden both courts and litigants.
As to the procedural issue raised, the majority has devised a solution to a problem recognized neither by the legislature nor the Court of Appeals. We are in agreement that this action was properly dismissed as against HJD; however, a procedural bar is perceived by the majority to prevent this Court from summarily disposing of the action as against HSS. Particularly, the majority holds that the summary judgment motion interposed by HSS was untimely and beyond the motion court’s power to entertain pursuant to Brill. Under the circumstances presented by this matter, this view constitutes an unnecessarily rigid application of CPLR 3212 (a), contravening the sound policy considerations underlying the decision and the intent expressed by the legislature in amending the statute.
The practice sought to be deterred in Brill is delay occasioned by the submission of a summary judgment motion on the eve of trial, thereby staying proceedings to the prejudice of litigants who have applied their resources in preparation for trial of the issues (Brill, 2 NY3d at 651). Here, at the time HSS submitted its untimely motion for summary judgment, the proceedings were already stayed by the concededly timely summary judgment motion brought by HJD. Thus, the primary objective of Brill to discourage dilatory conduct is not implicated (see Fofana v 41 W. 34th St., LLC, 71 AD3d 445, 448 [1st Dept 2010], lv denied 14 NY3d 713 [2010]). Granted, the HSS motion is not a cross motion, as denominated, and as such it is untimely (CPLR 2215). But to reject the motion on that ground, under the facts herein, ignores the adverse consequences of imposing an overly restrictive rule, specifically, consequences that are especially adverse to the courts.
The motion by HJD was submitted on November 11, 2011, three days before the deadline of November 14, 2011 imposed by the motion court under CPLR 3212 (a). The motion by HSS was submitted shortly after the end of the holiday season on January 10, 2012, and the respective motions were finally decided by the motion court on July 16, 2012, over seven months *95 later. Neither the motion court nor the majority identifies any prejudice that was incurred by any party due to HSS’s motion that might warrant requiring HSS to forfeit summary determination. Particularly absent from the discourse is any consideration of the significant burden to be imposed on the court in presiding over a trial against HSS as opposed to proceeding summarily by way of motion.
Brill emphasizes that summary judgment is advantageous to the parties by “avoiding needless litigation cost and delay” and constitutes “a great benefit both to the parties and to the overburdened New York State trial courts” since it “may resolve the entire case” (Brill, 2 NY3d at 651). Thus, Brill cannot be said to reflect an intent to abandon the conspicuous advantages of summary judgment for the sake of procedural formalism. In that regard, the majority’s disposition is antithetical, directing a party to try a case under circumstances to which Brill is inapposite because trial has been delayed not by an eleventh-hour summary judgment motion, but by one that is altogether timely. The majority thereby dispenses with the salutary aspects of summary disposition acknowledged in Brill for no apparent purpose.
An overly expansive application of Brill invites unintended consequences following from the legislature’s 1996 amendment of CPLR 3212 (a). Rote application of the summary judgment provision, which permits the court to “set a date after which no such motion may be made,” leads to the result advocated by the majority — strict rejection of the motion as untimely without taking into consideration the circumstances of the case, relegating the moving party to litigating its position at trial. However, it is a well-established rule of statutory construction that a court should avoid any interpretation that leads to absurd and unintended consequences (see Matter of Friedman-Kien v City of New York, 92 AD2d 827, 828-829 [1983], affd 61 NY2d 923 [1984], citing Matter of Chatlos v McGoldrick, 302 NY 380, 387-388 [1951]; McKinney’s Cons Laws of NY, Book 1, Statutes §§ 92, 145, 147). If it was indeed the legislature’s intent to preclude dilatory conduct, not to deprive a court of the ability to resolve an entire case summarily, then it falls within the observation of the United States Supreme Court in Church of Holy Trinity v United States (143 US 457, 472 [1892]) that “however broad the language of the statute may be, the act, although within the letter, is not within the intention of the legislature, and therefore cannot be within the statute.”
*96 The undesirable practice sought to be prevented by revision of CPLR 3212 (a) is the waste of resources expended in preparation for trial as the result of a belated summary judgment motion staying the proceedings. In addressing this problem, the Court of Appeals noted that “the Legislature struck a balance, fixing an outside limit on the time for filing summary judgment motions, but allowing courts latitude to set an alternative limit or to consider untimely motions to accommodate genuine need” (Brill, 2 NY3d at 651). Significantly, Brill deals with the straightforward situation in which an initial summary judgment motion is filed well after a matter has been certified as ready for trial in “violation of legislative mandate” (id. at 653). In that context, where “[t]he violation is clear,” the “good cause” required to obtain relief from the statutory time limit is “a satisfactory explanation for the untimeliness” in filing the motion (id. at 652).
Likewise, the legislative memorandum in support of the amendment to CPLR 3212 (a) is concerned with the disruption to court calendars by a motion interposed on the eve of trial (Sponsor’s Mem, Bill Jacket, L 1996, ch 492 at 7-8, reprinted in 1996 McKinney’s Session Laws of NY at 2432-2433). Furthermore, both the memorandum and Brill identify an adversarial party’s lack of adequate time to prepare a response to the motion as the problem to be addressed. Here, HJD’s submission of its moving papers a mere three days before the final date set by the trial court contravenes the spirit of Brill by depriving HSS of an adequate opportunity to timely file its own application for similar relief because, at such point in time, HSS is presumed to have been devoting its resources to preparation for trial (Brill, 2 NY3d at 651). Unfairness to one party is not remedied by applying the statute to the detriment of another.*
There is no suggestion that the narrow interpretation imposed upon the term “good cause” in Brill is meant to apply in circumstances, such as here, where a timely motion is followed by a corresponding motion that is not. As the Court of Appeals has admonished, “ ‘No opinion is an authority beyond the point actually decided, and no judge can write freely if every sentence *97 is to be taken as a rule of law separate from its association’ ” (Matter of Staber v Fidler, 65 NY2d 529, 535 [1985], quoting Dougherty v Equitable Life Assur. Socy., 266 NY 71, 88 [1934]). Unlike Brill, the circumstances presented by the instant matter do not furnish a compelling reason to depart from prior authority affording a court discretion to entertain a marginally late filing where the party’s application has merit and no prejudice has been demonstrated by an adversary (see e.g. Burns v Gonzalez, 307 AD2d 863, 864-865 [1st Dept 2003]; Garrison v City of New York, 300 AD2d 14, 15 [1st Dept 2002], lv denied 99 NY2d 510 [2003]). To the contrary, the compelling interest is judicial economy, which militates in favor of summary disposition of even an untimely motion made in response to one timely filed (see Burns, 307 AD2d at 864), especially if that “summary judgment motion may resolve the entire case” (Brill, 2 NY3d at 651). Given the budgetary constraints presently confronted by the court system, this is hardly a fitting time to require trial of a matter devoid of apparent merit and otherwise amenable to disposition on motion, and the “genuine need” to be accommodated is that of the court to proceed expeditiously (id.).
Contrary to the majority’s assertion, I do not advocate limiting application “of Brill to those actions where a party files a motion for summary judgment long after the deadline for dis-positive motions and the matter is on the trial calendar.” It is a distorted analysis of my position. I simply note that Brill is inapposite to the facts of this matter and that both the decision and the statute it construes apply only to a party whose motion has the effect of staying and delaying trial. Since trial of this matter was already stayed by HJD’s timely motion for summary judgment at the time HSS submitted its marginally late summary judgment motion which raises the same dispositive issue as the timely motion, refusing to entertain the subsequent motion does nothing to avoid the delay of trial and waste of judicial resources, the primary purposes of Brill, by requiring trial of a virtually identical lawsuit ripe for summary disposition.
Strict and rigid application of Brill is even less understandable given the similarity of the grounds advanced by the respective hospitals in support of their summary judgment motions and the ground upon which disposition rests. A late motion filing is properly entertained when it raises nearly identical issues to one timely made (see Lapin v Atlantic Realty Apts. Co., LLC, 48 AD3d 337, 337 [1st Dept 2008]; Alexander v Gordon, 95 AD3d 1245, 1246-1247 [2d Dept 2012]; Grande v Peteroy, 39 AD3d *98 590, 591-592 [2d Dept 2007]). Here, the modestly late motion submitted by HSS sought relief on the same issues raised in HJD’s timely motion. Under the circumstances presented, the motion court was within its discretion to review HSS’s motion on the merits (see Alexander, 95 AD3d at 1247; Grande, 39 AD3d at 591-592). Both seek dismissal of the complaint on the identical ground — that it was not a departure from good and accepted medical practice to forgo surgery in favor of a conservative treatment plan, i.e., based on the severity of plaintiff’s existing spinal disease and the low prospect of improving his condition, the decision not to subject plaintiff to the risk of quadriplegia or death was a sound medical decision. In support of its motion, HSS even relies on the same affidavit by Dr. Olsewski submitted in support of HJD’s motion.
Dr. Olsewski opined that based upon plaintiff’s medical, diagnostic and surgical history, further cervical surgery would have been an “unjustifiable and extraordinarily risky and aggressive treatment option.” No surgery would have been able to reverse plaintiffs neurological deficits, “which were significant by the time he presented at HJD, and had already existed for many years.” According to Dr. Olsewski, the best case scenario “was to stop further progression of the cervical myelopathy”; the worst could have resulted in permanent paralysis or death, risks “well beyond the standard . . . for cervical spine cases.”
As to the delay causing any injury, the doctor stated that there was no identifiable injury caused by any alleged delay during the four-month period between when plaintiff was first seen at HJD and when he first went to Mt. Sinai. The doctor also noted that plaintiff did not objectively regain any strength or function after having the surgery at Mt. Sinai, and the only change in his condition was numbness in his right arm and hand, likely due to the development of carpal tunnel syndrome. This was supported by Dr. Hecht’s finding that there was no substantial neurological improvement in plaintiffs condition after his surgery at Mt. Sinai.
Both HSS and HJD established their prima facie entitlement to summary judgment, proffering evidence that plaintiff did not sustain any injury resulting from the respective institutions’ independent decisions to recommend against further surgery. In response, plaintiff’s expert merely averred that if the subject cervical revision surgery had been performed earlier, plaintiffs ultimate outcome would have been substantially improved and he would not have sustained such a severe degree of weakness *99 and loss of function of his right upper extremity. However, the expert failed to support his assertion with an analysis of the multiple diagnostic tests and physical examinations conducted over the years. Dr. Murphy conclusively states that plaintiffs condition progressively deteriorated during the period of treatment at defendant hospitals, yet he points to no objective evidence supporting this statement, despite the fact that the record contains numerous diagnostic tests over that period of time. Thus, his opinion is an ambiguous statement of causation, amounting to bare conjecture, which is insufficient to defeat a motion for summary judgment (see Foster-Sturrup v Long, 95 AD3d 726, 728-729 [1st Dept 2012]; Callistro v Bebbington, 94 AD3d 408, 410-411 [1st Dept 2012], affd 20 NY3d 945 [2012]).
The majority suggests that an independent basis for finding HSS to have been negligent might be found in the expert’s opinion that “surgery for [plaintiff] was indicated as early as June 2003.” With the advantage of hindsight, the doctor offers that “[w]hile further diagnostic studies were not inappropriate, they did not contribute any substantial information which would alter the indicated treatment.” This statement concedes that HSS properly conducted further studies; that the results failed to afford any further diagnostic insight that was not predictable, and neither the tests themselves nor the time expended in conducting them are rendered improper as a result of that outcome. Moreover, while there is mention of a surgical option in the 2004 hospital records, the evidence does not show that evaluation of the attendant risks and benefits was undertaken until October 2004, culminating in the December 2004 decision that the associated risk was too great. Likewise, there is no indication that plaintiff was prepared to undergo the procedure prior to October 2004, when he first consulted with Dr. Freylinghuysen. Plaintiffs expert does not even address the question of whether, taking plaintiffs obviously compromised physical condition into account, it was a departure from good and accepted medical practice to pursue a conservative course of treatment rather than assume the risk of surgical intervention. Again, in hindsight, he formulates a conclusory opinion that the more aggressive approach to treatment was the proper one; the competing medical factors to be considered in deciding whether to perform the surgery are simply not addressed. Finally, the majority adopts the trial court’s conclusion that the expert’s opinion is imprecise with respect to the nature of the alleged deterioration in plaintiff’s condition and the extent to which *100 each hospital bears responsibility. The plaintiff’s expert’s opinion is equally conclusory whether it is applied to the asserted negligence of either facility, and if it does not suffice to sustain the action as against HJD, it does not suffice to sustain the action as against HSS.
Accordingly, the order should be modified to the extent of granting defendant HSS’s motion for summary judgment.
Acosta and Saxe, JJ., concur with Feinman, J.; Tom, J.E, dissents in part in a separate opinion in which Freedman, J., concurs.
Order, Supreme Court, New York County, entered July 16, 2012, affirmed, without costs. Judgment, same court, entered August 20, 2012, affirmed, without costs.

 To reiterate, it was the timely motion by HJD that delayed trial, not the motion submitted by HSS while HJD’s motion was pending, a situation addressed neither by the statute nor Brill. To the extent that good cause is even material under these circumstances, it is the sheer impossibility of preparing a dispositive motion during the remaining time established by the court for its submission.