Pasek v Catholic Health Sys., Inc. (2020 NY Slip Op 04652)





Pasek v Catholic Health Sys., Inc.


2020 NY Slip Op 04652


Decided on August 20, 2020


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on August 20, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CENTRA, J.P., PERADOTTO, NEMOYER, WINSLOW, AND BANNISTER, JJ.


306 CA 19-01088

[*1]JULIE E. PASEK, INDIVIDUALLY AND AS POWER OF ATTORNEY FOR JAMES G. PASEK, PLAINTIFF-RESPONDENT,
v
CATHOLIC HEALTH SYSTEM, INC., ET AL., DEFENDANTS, AND GEORGE R. BANCROFT, M.D., DEFENDANT-APPELLANT. 






ROACH, BROWN, MCCARTHY & GRUBER, P.C., BUFFALO (J. MARK GRUBER OF COUNSEL), FOR DEFENDANT-APPELLANT.
BROWN CHIARI LLP, BUFFALO (ANGELO S. GAMBINO OF COUNSEL), FOR PLAINTIFF-RESPONDENT. 


 Appeal from an order of the Supreme Court, Erie County (Donna M. Siwek, J.), entered January 28, 2019. The order denied the motion of defendant George R. Bancroft, M.D., for summary judgment dismissing the complaint and cross claims against him. 
It is hereby ORDERED that the order so appealed from is unanimously modified on the law by granting in part the motion of defendant George R. Bancroft, M.D., and dismissing the complaint against him except insofar as the complaint, as amplified by the bill of particulars, alleges that he mismanaged the transport of James G. Pasek to the operating room on February 7, 2014, and as modified the order is affirmed without costs.
Memorandum: In this action for, inter alia, medical malpractice seeking damages for injuries sustained by James G. Pasek, George R. Bancroft, M.D. (defendant) appeals from an order denying his motion for summary judgment dismissing the complaint and cross claims against him.
Pasek underwent mitral valve repair surgery in February 2014. Serious complications occurred during the surgery and, during the post-operative period, Pasek was placed on a ventilator and an extracorporeal membrane oxygenation (ECMO) system, which mechanically circulated his blood outside his body through an artificial lung. A few days after the surgery, Pasek's condition deteriorated and he was emergently transported from the open heart unit to the operating room. Defendant was the attending anesthesiologist for the transport, during which the ECMO tubing became unintentionally disconnected. Pasek subsequently suffered, among other things, massive blood loss, hypoxic brain injury due to a lack of oxygen, and occipital lobe damage, allegedly arising from, inter alia, defendant's malpractice in transporting him to the operating room.
A medical malpractice defendant meets his or her initial burden on a motion for summary judgment by presenting "factual proof, generally consisting of affidavits, deposition testimony and medical records, to rebut the claim of malpractice by establishing that [he or she] complied with the accepted standard of care or did not cause any injury to the patient" (Hope A.L. v Unity Hosp. of Rochester, 173 AD3d 1713, 1714 [4th Dept 2019]; see Webb v Scanlon, 133 AD3d 1385, 1386 [4th Dept 2015]). We agree with defendant that he satisfied his initial burden on the motion with respect to both compliance with the accepted standard of care and proximate cause by presenting factual evidence, including his own detailed affidavit that "address[ed] each of the specific factual claims of negligence raised in plaintiff's bill of particulars" (Larsen v Banwar, 70 AD3d 1337, 1338 [4th Dept 2010]) and was "detailed, specific and factual in nature" (Macaluso v Pilcher, 145 AD3d 1559, 1560 [4th Dept 2016] [internal quotation marks omitted]; see Groff v [*2]Kaleida Health, 161 AD3d 1518, 1520 [4th Dept 2018]). The burden thus shifted to plaintiff to "raise an issue of fact by submitting an expert's affidavit establishing both a departure from the accepted standard of care and that the departure was a proximate cause of the injury" (Nowelle B. v Hamilton Med., Inc., 177 AD3d 1256, 1257 [4th Dept 2019]; see Isensee v Upstate Orthopedics, LLP, 174 AD3d 1520, 1522 [4th Dept 2019]).
The affidavit of plaintiff's expert anesthesiologist addressed defendant's conduct only with respect to the claims arising from defendant's alleged failure to ensure that the transport of Pasek to the operating room was performed safely and his alleged failure to document the disconnection event and resulting blood loss in Pasek's medical chart. Inasmuch as plaintiff's expert failed to address the claims against defendant regarding the diagnosis, consulting, testing, examination, and pre- and post-operative treatment and did not identify any deviation with respect to defendant's efforts to ventilate, monitor, or resuscitate Pasek, those claims are deemed abandoned. Supreme Court thus erred in denying defendant's motion with respect to those claims (see Bubar v Brodman, 177 AD3d 1358, 1361 [4th Dept 2019]; Donna Prince L. v Waters, 48 AD3d 1137, 1138 [4th Dept 2008]), and we therefore modify the order accordingly.
We conclude that the court properly denied defendant's motion with respect to plaintiff's claim that defendant failed to ensure that the transport of Pasek was conducted safely. Plaintiff raised a triable issue of fact with respect to defendant's deviation from the standard of care by submitting, inter alia, the affidavit of her expert anesthesiologist, the deposition testimony of defendant, and excerpts from the depositions of a nurse and two perfusionists who assisted with the transport. Plaintiff's expert anesthesiologist opined, to a reasonable degree of medical certainty, that defendant and each of the other medical providers who participated in the transport of Pasek had a duty to make sure that the transport was done efficiently, quickly, and safely and to ensure that all equipment connected to Pasek, including the ECMO tubing, was secure and free from hazards before beginning the transport.
Although defendant stated in his affidavit that his role during the transport was limited to monitoring Pasek's vital signs and maintaining his airway, and that he had no responsibility with respect to the ECMO equipment or for pushing Pasek's bed, defendant also testified at his deposition that it was the responsibility of "the entire team" to make sure that Pasek's bed exited the doorway. Defendant's own testimony thus indicates that, as a member of the transport team, he was responsible, at least in part, for making sure that Pasek's bed exited the doorway safely. Defendant's testimony also conflicted with his statement in his affidavit that he "was not involved physically with the movement of the bed during the transport." Additionally, a perfusionist who assisted with the transport testified that defendant was involved in moving Pasek's bed to the operating room, and a nurse who assisted with the transport testified that defendant was the "head of the transport team." Such testimony contradicted defendant's testimony that there was no "head" of the transport team and that he had no "supervisory duty over those assisting in the transport." Furthermore, when asked who was responsible for the ECMO equipment during the transport, the nurse testified that "Anesthesia" was responsible and a perfusionist testified, "[w]e all have a responsibility to watch the tubing."
We reject defendant's contention that plaintiff failed to raise a triable issue of fact with respect to proximate cause. In his affidavit, defendant stated that there was nothing he did or allegedly failed to do that caused or contributed to any of the injuries claimed by plaintiff and that Pasek did not exhibit any symptoms "at that moment following the disconnection [of the ECMO tubing] during the transport." Plaintiff's expert anesthesiologist, however, stated that defendant's deviations from the standard of care during the transport of Pasek contributed to the unintentional disconnection of the ECMO tubing, which resulted in substantial blood loss, followed by a "sharp drop in [Pasek's] blood pressure and bradycardia." Where, as here, "a nonmovant's expert affidavit squarely opposes the affirmation of the moving part[y's] expert, the result is a classic battle of the experts that is properly left to a jury for resolution" (Mason v Adhikary, 159 AD3d 1438, 1439 [4th Dept 2018] [internal quotation marks omitted]).
With respect to the claim that defendant failed to document the transport event in Pasek's medical chart, defendant stated in his affidavit that it was neither his duty nor his responsibility to document the transport of Pasek to the operating room and that it would have been inappropriate for him to do so because he did not observe a disconnection of the ECMO tubing and the ECMO equipment was not his responsibility. Plaintiff's expert, however, stated that the standard of care [*3]required defendant, as the attending anesthesiologist, to notate his observations of Pasek's blood loss during the transport, and that defendant's failure to document the chart was a deviation from the standard of care. Thus, we conclude that the affidavit of plaintiff's expert was sufficient to raise a triable issue of fact whether defendant deviated from the applicable standard of care.
We agree with defendant, however, that plaintiff's expert failed to raise an issue of fact with respect to the alleged documentation failure as a proximate cause of Pasek's injury. Defendant, in his own affidavit, stated that nothing he did or failed to do resulted in a misdiagnosis or resulted in a lack of understanding of Pasek's condition by subsequent health care providers, and plaintiff's expert did not opine that defendant's failure to document Pasek's chart caused any injury. The court therefore erred in denying defendant's motion with respect to that claim, and we further modify the order accordingly.
Entered: August 20, 2020
Mark W. Bennett
Clerk of the Court