Martingano v Hall (2020 NY Slip Op 06618)





Martingano v Hall


2020 NY Slip Op 06618


Decided on November 13, 2020


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on November 13, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., PERADOTTO, LINDLEY, TROUTMAN, AND DEJOSEPH, JJ.


711 CA 19-01196

[*1]JAMES MARTINGANO, AS ADMINISTRATOR OF THE ESTATE OF REIGO MARTINGANO AND AS EXECUTOR OF THE ESTATE OF HELEN MARTINGANO, PLAINTIFF-RESPONDENT,
v
WALTER A. HALL, M.D., JOHN PICANO, M.D., DENISE BRANNICK, M.D., MOHAMMED OMAR, M.D., NEUROLOGICAL ASSOCIATES OF CENTRAL NEW YORK, LLP, RADIOLOGY ASSOCIATES OF NEW HARTFORD, LLP, DEFENDANTS-APPELLANTS, ET AL., DEFENDANTS. 






GALE GALE & HUNT, LLC, SYRACUSE (ANDREW R. BORRELLI OF COUNSEL), FOR DEFENDANTS-APPELLANTS WALTER A. HALL, M.D. AND NEUROLOGICAL ASSOCIATES OF CENTRAL NEW YORK, LLP. 
SMITH, SOVIK, KENDRICK & SUGNET, P.C., SYRACUSE (CHRISTOPHER F. DEFRANCESCO OF COUNSEL), FOR DEFENDANTS-APPELLANTS DENISE BRANNICK, M.D., MOHAMMED OMAR, M.D., AND RADIOLOGY ASSOCIATES OF NEW 

 


 Appeals from an order of the Supreme Court, Oneida County (David A. Murad, J.), entered June 4, 2019. The order, insofar as appealed from, denied the motion of defendants Walter A. Hall, M.D., and Neurological Associates of Central New York, LLP, and denied the cross motion of defendants John Picano, M.D., Denise Brannick, M.D, Mohammed Omar, M.D., and Radiology Associates of New Hartford, LLP, seeking summary judgment dismissing plaintiff's amended complaint against them. 
It is hereby ORDERED that the order insofar as appealed from is unanimously reversed on the law without costs, the motion and cross motion are granted, and the amended complaint is dismissed against defendants-appellants.
Memorandum: Plaintiff, as administrator of the estate of Reigo Martingano (decedent) and executor of the estate of Helen Martingano, commenced this medical malpractice and wrongful death action alleging, inter alia, that defendants were negligent in the care and treatment of decedent's brain tumor and that, as a result of the negligence, decedent suffered recurrence of the tumor, which was not timely detected and treated. Defendants Walter A. Hall, M.D. and Neurological Associates of Central New York, LLP (collectively, Neurological Associates) performed surgery to remove the tumor and provided treatment thereafter. Defendants John Picano, M.D., Denise Brannick, M.D., Mohammed Omar, M.D., and Radiology Associates of New Hartford, LLP (collectively, Radiology Associates) were emergency department radiologists who interpreted CT scans of decedent's brain on three occasions when decedent was hospitalized because of seizures. Neurological Associates and Radiology Associates appeal from an order that, inter alia, denied their respective motion and cross motion for summary judgment dismissing the amended complaint against them.
With respect to Neurological Associates' motion, Supreme Court properly determined that they " 'established their prima facie entitlement to judgment as a matter of law by . . . demonstrating that [they] did not deviate or depart from accepted medical practice or proximately cause [decedent's] injuries' " (Edwards v Myers, 180 AD3d 1350, 1352 [4th Dept 2020]; see generally Zuckerman v City of New York, 49 NY2d 557, 562 [1980]). The expert affidavit of the neurosurgeon submitted by Neurological Associates was "detailed, specific and factual in nature . . . and address[ed] each of the specific factual claims of negligence raised in [plaintiff's] bill[s] of particulars" (Dziwulski v Tollini-Reichert, 181 AD3d 1165, 1165-1166 [4th Dept 2020] [internal quotation marks omitted]).
We agree with Neurological Associates, however, that the court erred in determining that plaintiff raised a triable issue of fact in opposition to Neurological Associates' motion. Although we reject Neurological Associates' contention that the affidavits of plaintiff's two medical experts raised a new theory of liability in opposition to the motion (see Gilfus v CSX Transp., Inc., 79 AD3d 1671, 1673 [4th Dept 2010]), we nevertheless conclude that the experts' opinions were "speculative, conclusory and 'unsupported by competent evidence tending to establish the essential elements of medical malpractice' " (Boland v Imboden, 163 AD3d 1408, 1409 [4th Dept 2018], lv denied 32 NY3d 912 [2019], quoting Alvarez v Prospect Hosp., 68 NY2d 320, 325 [1986]).
In particular, plaintiff's experts "failed to provide any factual basis for [their] conclusion[s]" that Neurological Associates deviated from the standard of care in surgically resecting the tumor, documenting the resection, and advising decedent as to post-operative radiation and, therefore, the experts' affidavits "lacked probative force and [were] insufficient as a matter of law to overcome" the motion with respect to those claims (Diaz v New York Downtown Hosp., 99 NY2d 542, 545 [2002]; see Bubar v Brodman, 177 AD3d 1358, 1360 [4th Dept 2019]). With respect to the claims regarding post-operative monitoring of decedent's condition and detection of recurrence, although plaintiff raised a triable issue of fact whether Neurological Associates deviated from the applicable standard of care in that regard, we nevertheless conclude that plaintiff's submissions are insufficient to raise a triable issue of fact whether any such deviation was a proximate cause of decedent's injuries (see Page v Niagara Falls Mem. Med. Ctr., 174 AD3d 1318, 1320 [4th Dept 2019], lv denied 34 NY3d 908 [2020]). Plaintiff's experts failed to explain how further testing would have led to an earlier diagnosis of recurrence of the tumor (see G.L. v Harawitz, 146 AD3d 476, 476 [1st Dept 2017]; Foster-Sturrup v Long, 95 AD3d 726, 728-729 [1st Dept 2012]) and offered only conclusory and speculative assertions that earlier detection of recurrence and additional treatment would have produced a different outcome for decedent (see Longtemps v Oliva, 110 AD3d 1316, 1319 [3d Dept 2013]; Poblocki v Todoro, 49 AD3d 1239, 1240 [4th Dept 2008]; Bullard v St. Barnabas Hosp., 27 AD3d 206, 206 [1st Dept 2006]). Based on the foregoing, we conclude that the court erred in denying Neurological Associates' motion for summary judgment dismissing the amended complaint against them.
We further conclude that the court erred in denying the cross motion of Radiology Associates for summary judgment dismissing the amended complaint against them. Initially, contrary to the court's determination, we conclude that Radiology Associates' experts, who were board certified neurosurgeons, were qualified to offer opinions on the emergency department radiology services provided to decedent (see Moon Ok Kwon v Martin, 19 AD3d 664, 664 [2d Dept 2005]), inasmuch as the experts "possessed the requisite skill, training, knowledge and experience to render . . . reliable opinion[s]" in this case (Fay v Satterly, 158 AD3d 1220, 1221 [4th Dept 2018]). It is well settled that "[a] physician need not be a specialist in a particular field to qualify as a medical expert and any alleged lack of knowledge in a particular area of expertise goes to the weight and not the admissibility of the testimony" (Moon Ok Kwon, 19 AD3d at 664; see Stradtman v Cavaretta [appeal No. 2], 179 AD3d 1468, 1471 [4th Dept 2020]).
Radiology Associates met their initial burden on the cross motion, and plaintiff failed to raise a triable issue in opposition thereto. The record establishes that Radiology Associates assumed only a limited duty of care in interpreting CT scans of decedent's brain when he was hospitalized for seizures in order to rule out emergent conditions such as hemorrhaging, skull fracture, or brain injury and to ensure that decedent was stabilized (see Neyman v Doshi Diagnostic Imaging Servs., P.C., 153 AD3d 538, 546 [2d Dept 2017]; Schallert v Mercy Hosp. of Buffalo, 281 AD2d 983, 983 [4th Dept 2001]). Indeed, on the occasions that decedent was [*2]admitted to the emergency department, he was under the care of other physicians for his tumor condition, the scope of radiology services was limited to emergency care, and Radiology Associates did not "assume[] a general duty of care to schedule or urge further testing, or [to] diagnose [or treat decedent's underlying] medical condition[]" (Mosezhnik v Berenstein, 33 AD3d 895, 897 [2d Dept 2006]; see Covert v Walker, 82 AD3d 825, 826 [2d Dept 2011]; Pigut v Leary, 64 AD3d 1182, 1183 [4th Dept 2009]).
Entered: November 13, 2020
Mark W. Bennett
Clerk of the Court