Humbolt v Parmeter (2021 NY Slip Op 04472)





Humbolt v Parmeter


2021 NY Slip Op 04472


Decided on July 16, 2021


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 16, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CARNI, J.P., LINDLEY, CURRAN, WINSLOW, AND DEJOSEPH, JJ.


1187 CA 19-02271

[*1]CHERYL HUMBOLT, PLAINTIFF-RESPONDENT,
v
KRISTIN K. PARMETER, N.P., INDIVIDUALLY, AND AS AN OFFICER, AGENT AND/OR EMPLOYEE OF SYRACUSE ORTHOPEDIC SPECIALISTS, P.C., ET AL., DEFENDANTS, DENISE LOUGEE, P.A., INDIVIDUALLY, AND AS AN OFFICER, AGENT AND/OR EMPLOYEE OF ST. JOSEPH'S MEDICAL, P.C., DOING BUSINESS AS ST. JOSEPH'S PHYSICIANS, JULIE KING, M.D., INDIVIDUALLY, AND AS AN OFFICER, AGENT AND/OR EMPLOYEE OF ST. JOSEPH'S MEDICAL, P.C., DOING BUSINESS AS ST. JOSEPH'S PHYSICIANS, AND ST. JOSEPH'S MEDICAL, P.C., DOING BUSINESS AS ST. JOSEPH'S PHYSICIANS, BY AND THROUGH ITS OFFICERS, AGENTS AND/OR EMPLOYEES, DEFENDANTS-APPELLANTS. 






MAGUIRE CARDONA, P.C., ALBANY (MOLLY C. CASEY OF COUNSEL), FOR DEFENDANTS-APPELLANTS.
BOTTAR LEONE, PLLC, SYRACUSE, POWERS & SANTOLA, LLP, ALBANY (MICHAEL J. HUTTER OF COUNSEL), FOR PLAINTIFF-RESPONDENT. 


 Appeal from an order of the Supreme Court, Onondaga County (Donald A. Greenwood, J.), entered July 19, 2019. The order denied the motion for summary judgment of defendants Denise Lougee, P.A., individually, and as an officer, agent and/or employee of St. Joseph's Medical, P.C., doing business as St. Joseph's Physicians; Julie King, M.D., individually, and as an officer, agent and/or employee of St. Joseph's Medical, P.C., doing business as St. Joseph's Physicians; and St. Joseph's Medical, P.C., doing business as St. Joseph's Physicians, by and through its officers, agents and/or employees. 
It is hereby ORDERED that the order so appealed from is reversed on the law without costs, the motion is granted and the complaint is dismissed against defendants Denise Lougee, P.A., individually, and as an officer, agent and/or employee of St. Joseph's Medical, P.C., doing business as St. Joseph's Physicians, Julie King, M.D., individually, and as an officer, agent and/or employee of St. Joseph's Medical, P.C., doing business as St. Joseph's Physicians, and St. Joseph's Medical, P.C., doing business as St. Joseph's Physicians, by and through its officers, agents and/or employees.
Memorandum: Plaintiff commenced this medical malpractice action against multiple defendants, alleging, inter alia, that she sustained injuries, including paraplegia, caused by negligence in the care and treatment rendered by, among others, defendant Syracuse Orthopedic Specialists, P.C., by and through its officers, agents, and/or employees (SOS), defendant Kristin K. Parmeter, N.P., individually and as an agent and/or employee of SOS, defendant St. Joseph's Medical, P.C., doing business as St. Joseph's Medical Physicians, by and through its officers, agents and/or employees (St. Joseph's), defendant Denise Lougee, P.A., individually, and as an officer, agent and/or employee of St. Joseph's, and defendant Julie King, M.D., individually and as an officer, agent and/or employee of St. Joseph's. Of relevance to this appeal, plaintiff alleged [*2]that if Lougee and King had made an appropriate referral to an orthopedic specialist and monitored her condition after the referral was made, plaintiff would have received necessary surgery before she became paralyzed. Lougee, King and St. Joseph's (collectively, defendants) appeal from an order denying their motion for summary judgment dismissing the complaint against them.
Prior to the events leading to this appeal, plaintiff suffered from scoliosis and underwent multiple spinal surgeries, including a fusion and the insertion of "Harrington rods" to stabilize her spine. Beginning in 2015, King was plaintiff's primary care physician. King was aided by Lougee, a physician assistant, and both were employed by St. Joseph's. King and Lougee monitored plaintiff's various chronic ailments, which included back pain and chronic obstructive pulmonary disease (COPD) and, prior to October 2016, plaintiff was also receiving treatment for her chronic back pain from SOS and from a non-party pain management specialist. On October 3, 2016, plaintiff was evaluated by Lougee for, inter alia, complaints of increasing back pain. Lougee informed plaintiff that St. Joseph's would coordinate a referral to an orthopedist. Lougee ordered an updated X ray of plaintiff's back and completed a referral form for an orthopedist. The priority of the referral was described as "routine," and the nature of plaintiff's pain was described as "chronic." Plaintiff's
X ray, which was taken later that day but after the referral was sent to the orthopedist, revealed that the Harrington rods in her spine were broken. Upon receiving the radiology report, Lougee discussed the results with King and then contacted the employee of St. Joseph's who was responsible for making referrals to upgrade plaintiff's referral to SOS from routine to "stat," and to forward the imaging results to SOS. Defendants booked an appointment for plaintiff at SOS that same week, and a nurse employed by St. Joseph's contacted plaintiff to advise her of the X ray results and that her appointment at SOS was scheduled for October 7. Plaintiff did not attend the October 7 appointment at SOS, and it was rescheduled to October 17.
On October 17, plaintiff saw Parmeter, a nurse practitioner at SOS who, inter alia, performed a physical examination and reviewed and discussed with plaintiff the X ray showing the broken Harrington rods. Parmeter was unsure whether plaintiff's increasing back pain was a result of the broken Harrington rods or simply a byproduct of plaintiff's "extensive lumbar surgery in the past." Parmeter determined that plaintiff appeared to be "neurologically stable" at the appointment and that her condition was not emergent. SOS ordered additional diagnostic testing. Plaintiff was seen at SOS once more, on November 8, before she collapsed on November 20 and suffered, inter alia, paraplegia.
Plaintiff continued to see King between October 3 and November 11, 2016, and King was aware that plaintiff was being evaluated and treated by SOS for the issues with the Harrington rods. On October 28, King saw plaintiff for complaints of back pain and shortness of breath, which King believed were symptoms of plaintiff's chronic back pain and COPD because plaintiff had been experiencing the current episode of shortness of breath for two months. King saw plaintiff again on November 7, and plaintiff complained of shortness of breath and coughing, which King believed was related to plaintiff's COPD. King saw plaintiff for a follow-up visit on November 11 to ensure that plaintiff's condition was improving, and during that visit plaintiff made no reference to back pain.
We agree with defendants that Supreme Court erred in denying their motion. Defendants met their initial burden of establishing that the alleged departures from good and accepted medical practice were not the proximate cause of plaintiff's injuries (see Dziwulski v Tollini-Reichert, 181 AD3d 1165, 1165 [4th Dept 2020], lv denied 37 NY3d 901 [2021]; Bubar v Brodman, 177 AD3d 1358, 1359 [4th Dept 2019]; see generally Zuckerman v City of New York, 49 NY2d 557, 562 [1980]). Defendants submitted the affidavit of their medical expert, who concluded that defendants' alleged departures did not cause or contribute to plaintiff's injuries. The expert's affidavit was "detailed, specific and factual in nature" (Toomey v Adirondack Surgical Assoc., 280 AD2d 754, 755 [3d Dept 2001]), and " 'address[ed] each of the specific factual claims of negligence raised in . . . plaintiff's bill of particulars' " (Webb v Scanlon, 133 AD3d 1385, 1386 [4th Dept 2015]; see Dziwulski, 181 AD3d at 1166).
The affidavit of plaintiff's medical expert failed to raise a triable issue of fact in opposition inasmuch as the conclusory opinion of plaintiff's expert that defendants' "multiple deviations from the standard of care were a substantial contributing factor in causing [plaintiff's [*3]injuries]" is insufficient to raise an issue of fact concerning proximate cause (see Mosezhnik v Berenstein, 33 AD3d 895, 897 [2d Dept 2006]; see generally Pigut v Leary, 64 AD3d 1182, 1183 [4th Dept 2009]). It is undisputed that treatment of a condition arising out of an issue with plaintiff's spinal hardware is outside the scope of defendants' practice and that referral to an orthopedic specialist at SOS was appropriate, and plaintiff's expert failed to identify what treatments or interventions were necessary, how defendants' monitoring of SOS would have necessarily resulted in those treatments or interventions being performed by the specialist, and whether the timing of any such interventions would have prevented plaintiff's injuries. To the extent that our dissenting colleague suggests that plaintiff's failure to attend her appointment at SOS on October 7 evidences a failure on the part of defendants to inform her that the Harrington rods in her spine were broken, we reject that suggestion. Plaintiff's deposition testimony demonstrates that her memory was fleeting, and her ability to recall dates and events was poor. Indeed, plaintiff was also unable to remember the names of her physicians and admitted that her memory was no longer what it used to be.
All concur except Curran, J., who dissents and votes to affirm in the following memorandum: I respectfully dissent because, in my view, the affidavit of plaintiff's expert raised triable issues of material fact with respect to the alleged deviation from the applicable standard of care by defendant Denise Lougee, P.A., individually, and as an officer, agent and/or employee of St. Joseph's Medical, P.C., doing business as St. Joseph's Physicians, defendant Julie King, M.D., individually, and as an officer, agent and/or employee of St. Joseph's Medical, P.C., doing business as St. Joseph's Physicians, and defendant St. Joseph's Medical, P.C., doing business as St. Joseph's Physicians, by and through its officers, agents and/or employees (St. Joseph's) (collectively, defendants), as well as with respect to proximate cause, and I would vote to affirm the order denying defendants' motion for summary judgment (see generally Wick v O'Neil, 173 AD3d 1659, 1660 [4th Dept 2019]). Specifically, assuming arguendo, that defendants met their initial burden on the motion with respect to both deviation from the applicable standard of care and proximate cause, I agree with Supreme Court that plaintiff's expert raised triable issues of material fact whether defendants timely and appropriately communicated with plaintiff and her orthopedic specialist about the emergent significance of the broken Harrington rods located in her lower thoracic spine. Further, plaintiff's expert raised triable issues of material fact whether defendants deviated from the standard of care by failing to properly recognize the significance of plaintiff's severe shortness of breath and the relationship between that condition and her broken Harrington rods. Plaintiff's expert also raised triable issues of fact whether those alleged deviations from the standard of care were a proximate cause of plaintiff's injuries.
On September 9, 2016, plaintiff presented to defendants without any complaint of back pain. An X ray had been ordered three days earlier by a different medical provider, which did not reveal any new findings with respect to plaintiff's spine. On September 26, 2016, plaintiff saw Lougee, a physician's assistant, and reported a "new problem" with her back that had started three days earlier when she "twisted wrong." This was Lougee's first examination of plaintiff, after which she noted plaintiff's "chronic" back pain, and referred plaintiff to defendant Syracuse Orthopedic Specialists, P.C., sued by and through its officers, agents and/or employees (SOS), which plaintiff was already seeing for pain management.
A week later, on October 3, 2016, plaintiff reported to Lougee that she was experiencing "acute or chronic" back pain that had started two weeks earlier when she "was twisting and felt a 'pop.' " Lougee's notes from that visit state, inter alia, that this was a "new problem" and that, although the "problem occurs constantly," it had waxed and waned since onset. As the majority notes, Lougee ordered an X ray of plaintiff's spine, which was performed the same day and revealed that plaintiff had broken Harrington rods in her lower thoracic spine. A prior X ray from September 2016 had shown that the rods were intact at that time. Thus, the broken Harrington rods were clearly a new problem, not a chronic condition. Lougee testified that she directed St. Joseph's referral specialist to upgrade plaintiff's referral to SOS from routine to "stat" after reviewing the updated
X ray that showed broken Harrington rods. It is undisputed, however, that St. Joseph's referral contained no such direction; instead it merely described the referral's priority as "[r]outine" and stated that it was for "chronic" back pain.
Lougee stated in an affidavit that she also instructed a nurse to inform plaintiff about the broken Harrington rods, but plaintiff denied being so informed. On defendants' motion, we must [*4]accept as true any evidence submitted by the movant that favors the opposing party, i.e., plaintiff's deposition testimony (see Sopkovich v Smith, 164 AD3d 1598, 1601 [4th Dept 2018]; Bunk v Blue Cross & Blue Shield of Utica-Watertown, 244 AD2d 862, 862 [4th Dept 1997]). The majority's assertion that plaintiff suffered from a faulty memory on this point is ultimately an issue for a jury to resolve (see generally PJI 1:8), and not a reason to reject our obligation to accept her testimony as true on summary judgment. In any event, I note that plaintiff's testimony denying having been told about the broken Harrington rods also is consistent with statements in her medical records. The records state that plaintiff elected to reschedule her appointment with SOS so she could instead see a gastroenterologist, and that, on October 17, 2016, when plaintiff finally saw a nurse practitioner who worked for SOS, namely defendant Kristin K. Parmeter, N.P., sued individually and as an officer, agent and/or employee of SOS, there was no mention of the broken Harrington rods.
After her appointment with Parmeter, plaintiff saw King on October 28, 2016. Before the visit with King, St. Joseph's requested and received a copy of Parmeter's notes. In her treatment notes for the October 28 visit, King noted that plaintiff complained of severe aching back pain that had been worsening since onset. She also noted that plaintiff, who had a preexisting condition of chronic obstructive pulmonary disease (COPD), had recently started experiencing shortness of breath. Despite knowing about plaintiff's broken Harrington rods, King made no reference to them in her treatment notes. King also was aware that Parmeter did not discuss the broken rods with plaintiff. On November 7 and 11, 2016, plaintiff again visited King and complained about her continued shortness of breath, which King attributed to COPD. Once again, King's notes from the November visits make no mention of the broken Harrington rods.
In my view, the affidavit from plaintiff's expert raises triable issues of material fact on the issues of deviation from the standard of care and proximate cause. Specifically, plaintiff's expert opined that Lougee departed from the applicable standard of care because she failed to ensure that plaintiff was advised of the broken Harrington rods and failed to treat that condition as emergent. Plaintiff's expert also opined that Lougee departed from the standard of care because she failed to properly communicate the urgency of plaintiff's spinal condition to Parmeter and SOS. With respect to King, plaintiff's expert opined that, at the time King treated plaintiff for severe shortness of breath in October 2016, Parmeter and SOS had not treated the emergent condition of the broken Harrington rods. Thus, plaintiff's expert concluded that defendants deviated from the applicable standard of care by failing to monitor plaintiff's emergent condition during her three visits with King over a 16-day period in late October and early November 2016, and by failing to communicate with Parmeter and SOS about the failure to provide timely treatment for an emergent condition. In my view, the conflicting opinions of the parties' experts about defendants' alleged deviations from the standard of care result in "a classic battle of the experts that is properly left to a jury for resolution" (Mason v Adhikary, 159 AD3d 1438, 1439 [4th Dept 2018] [internal quotation marks omitted]; see Blendowski v Wiese [appeal No. 2], 158 AD3d 1284, 1286 [4th Dept 2018]; see generally Schultz v Excelsior Orthopaedics, LLP [appeal No. 2], 129 AD3d 1606, 1607 [4th Dept 2015]).
Additionally, I conclude that the court properly determined that plaintiff's expert raised triable questions of material fact on the issue of proximate cause—i.e., whether the alleged deviations from the standard of care were a substantial factor in diminishing plaintiff's chance of a better outcome. In particular, the court properly determined that there remained questions of material fact whether defendants' deviations caused the "broken rods to persist without appropriate treatment from October 3rd through November 20, 2016," which in turn caused "plaintiff to experience a period of spinal hypermobility [due to] the broken rods that[,] had [they] been timely diagnosed[,] would have been surgically corrected before compression caused permanent damage to [plaintiff's] spinal cord."
"Typically, the question of whether a particular act of negligence is a substantial cause of the plaintiff's injuries is one to be made by the factfinder, as such a determination turns upon questions of foreseeability and what is foreseeable and what is normal may be the subject of varying inferences" (Hain v Jamison, 28 NY3d 524, 529 [2016] [internal quotation marks omitted]; see Farnham v MIC Wholesale Ltd., 176 AD3d 1605, 1607 [4th Dept 2019]). It is equally well settled that "there may be more than one proximate cause of an injury" (Mazella v Beals, 27 NY3d 694, 706 [2016] [internal quotation marks omitted]). Thus, any negligence of Parmeter that may have been a proximate cause of plaintiff's worsened condition makes no [*5]difference to the issue of whether defendants' alleged deviations also were a proximate cause of that condition (see id.).
Defendants do not contend, nor could they contend under the circumstances here, that the alleged omissions by SOS were " 'extraordinary . . . not foreseeable . . . or far removed from' " defendants' own alleged omissions to act as an intervening cause breaking the chain of causation between their alleged omissions and those of SOS (id.). Regardless, plaintiff's burden at trial would be "to show that defendant[s'] conduct was a substantial causative factor in the sequence of events that led to [plaintiff's] injury . . . [and] [t]hat showing need not be made with absolute certitude nor exclude every other possible cause of injury" (Wright-Perkins v Lyon, 188 AD3d 1604, 1605 [4th Dept 2020] [internal quotation marks omitted]; see Koester v State of New York, 90 AD2d 357, 361 [4th Dept 1982]). Simply put, in opposition to defendants' motion, plaintiff has at least raised a triable question of material fact whether she will meet that standard at trial. This is not one of the "rare cases" where proximate cause can be determined as a matter of law (Hain, 28 NY3d at 530).
Further guiding my analysis is our precedent in medical malpractice cases involving omission theories—i.e., cases with allegations that the defendants were negligent because they failed to perform an action (see Wild v Catholic Health Sys., 85 AD3d 1715, 1717 [4th Dept 2011], affd 21 NY3d 951 [2013]), which is clearly present here. In medical malpractice cases alleging deviations from the standard of care based on omissions that also raise the issue of proximate cause—as is the case here—we have adopted a "loss of chance" theory of causation (id.; see Clune v Moore, 142 AD3d 1330, 1331-1332 [4th Dept 2016]; Wolf v Persaud, 130 AD3d 1523, 1524-1525 [4th Dept 2015]; see generally 1B NY PJI3d 2:150 at 47, 82-86 [2021]).
In such cases, where a "plaintiff alleges that the defendant negligently failed or delayed in diagnosing and treating a condition, a finding that the negligence was a proximate cause of an injury to the patient may be predicated on the theory that the defendant thereby 'diminished [the patient's] chance of a better outcome' " (Clune, 142 AD3d at 1331; see Wolf, 130 AD3d at 1525). In those instances, a "plaintiff must present evidence from which a rational jury could infer that there was a 'substantial possibility' that the patient was denied a chance of the better outcome as a result of the defendant's deviation from the standard of care . . . However, [a] plaintiff's evidence of proximate cause may be found legally sufficient even if his or her expert is unable to quantify the extent to which the defendant's act or omission decreased the [patient's] chance of a better outcome . . . , as long as evidence is presented from which the jury may infer that the defendant's conduct diminished the [patient's] chance of a better outcome" (Clune, 142 AD3d at 1331-1332 [internal quotation marks omitted]).
The record in Clune shows that the sole testimony of the plaintiff's expert regarding causation was that the chance of the plaintiff's decedent's survival would increase "the earlier in time or the closer in time that you catch a [medical problem] and are able to treat a [medical problem]." Based on that record, this Court determined that the testimony of the plaintiff's expert provided a rational basis upon which a jury could have found that the negligence of certain defendants was the proximate cause of the decedent's death (Clune, 142 AD3d at 1332). Here, as noted above, plaintiff's expert stated in an affidavit that "[d]efendants' multiple deviations from the standard of care were a substantial contributing factor in causing . . . plaintiff to experience a period of spinal hypermobility caused by the broken Harrington rods that, had it been timely diagnosed, would have been surgically corrected before compression caused permanent damage to her spinal cord." Thus, when compared to the expert's testimony in Clune, it is inconsistent to say that the opinion of plaintiff's expert here was conclusory. Indeed, the expert's testimony here is significantly more detailed with respect to what defendants could have done sooner than the expert in Clune—i.e., earlier surgical correction that would not only have improved the chance of a better outcome, but could have been performed before the paralyzing compression occurred.
In Stradtman v Cavaretta ([appeal No. 2] 179 AD3d 1468, 1471 [4th Dept 2020]), we likewise determined that the expert opinion relied upon by the plaintiff was neither speculative nor conclusory because "it was supported by ample evidence that, if defendants had performed an exploratory laparotomy of the entire bowel, they would have discovered that resection of the dying bowel was medically necessary, and, furthermore, that resection of decedent's dying bowel would have saved her life" (id.). A similar point can be made here. Plaintiff's expert opined, [*6]based in part on his review of plaintiff's medical records, that had defendants properly informed plaintiff and SOS of the urgent nature of plaintiff's condition, and monitored that condition and care based on the information available to them, plaintiff would not have suffered such severe compression of her spine, which resulted in paralysis of her lower body.
The dissent in Stradtman rejected the opinion of the plaintiff's expert as "conclusory," observing that "the expert failed to opine how a full abdominal exploration would have prevented the clinical deterioration of plaintiff's decedent or prevented her ultimate death" (id. at 1472 [Peradotto, J., dissenting]). In support of that conclusion on proximate cause, the dissent in Stradtman cites the exact same three cases relied upon by defendants here (Poblocki v Todoro, 49 AD3d 1239, 1240 [4th Dept 2008]; Sawczyn v Red Roof Inns, Inc., 15 AD3d 851, 852 [4th Dept 2005], lv denied 5 NY3d 710 [2005]; Koeppel v Park, 228 AD2d 288, 290 [1st Dept 1996]). I am therefore compelled to respectfully observe that, by adopting defendants' contentions regarding proximate cause, the majority's analysis here is contrary to the conclusion of Stradtman, and deviates from our precedent on the "loss of chance" theory of causation we have adopted in cases premised on omission theories of negligence.
As the trial Justice in Clune, it was my view that the testimony of the plaintiff's expert was insufficient as a matter of law on the issue of causation. I also have written about the concern that a loss of chance concept reduces a plaintiff's burden of proof on the element of proximate cause (see John M. Curran, "Loss of Chance" Doctrine in Medical Malpractice Cases, 87 NY St BJ 31 [Nov/Dec 2015])—a concern that I note is not universally shared (see Alan W. Clark, Lost Chance as a Substantial Factor In Causing Injury: Part 2, NYLJ, Oct. 22, 2020 at 4, col 4; Thomas A. Moore & Matthew Gaier, Revisiting New York Case Law On Loss of Chance: Part 1, NYLJ, Apr. 4, 2017 at 3, col 1; Thomas A. Moore & Matthew Gaier, Revisiting New York Case Law On Loss of Chance: Part 2, NYLJ, June 6, 2017 at 3, col 1). Nevertheless, it is beyond question that this Court has adopted a "loss of chance" approach to causation in medical malpractice actions, at least with respect to omission theories.
Based on our precedent applying the "loss of chance" approach, I conclude that we should remain true to those decisions unless we are directed otherwise. Thus, I respectfully submit that plaintiff has raised triable questions of material fact on the issue of proximate cause, an issue that the Court of Appeals has held "[t]ypically . . . is one to be made by the factfinder" (Hain, 28 NY3d at 529).
Entered: July 16, 2021
Mark W. Bennett
Clerk of the Court