Simko v Rochester Gen. Hosp. (2021 NY Slip Op 06470)





Simko v Rochester Gen. Hosp.


2021 NY Slip Op 06470


Decided on November 19, 2021


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on November 19, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., SMITH, PERADOTTO, CURRAN, AND DEJOSEPH, JJ.


621 CA 20-00852

[*1]KAREN S. SIMKO AND THOMAS SIMKO, PLAINTIFFS-APPELLANTS,
v
ROCHESTER GENERAL HOSPITAL, ROCHESTER REGIONAL HEALTH AND UNIVERSITY OF ROCHESTER, DEFENDANTS-RESPONDENTS. 






DOMINIC PELLEGRINO, ROCHESTER, FOR PLAINTIFFS-APPELLANTS.
HARRIS BEACH PLLC, PITTSFORD (SVETLANA K. IVY OF COUNSEL), FOR DEFENDANTS-RESPONDENTS ROCHESTER GENERAL HOSPITAL AND ROCHESTER




 Appeal from an order of the Supreme Court, Monroe County (William K. Taylor, J.), entered June 11, 2020. The order granted defendants' motions for summary judgment dismissing the complaint. 
It is hereby ORDERED that the order so appealed from is affirmed without costs.
Memorandum: Plaintiffs commenced this medical malpractice action after Karen S. Simko (plaintiff) was afflicted with Guillain-Barré Syndrome (GBS), claiming that defendants failed to timely diagnose and treat the condition. Plaintiffs appeal from an order that granted the motion of defendant University of Rochester insofar as it sought summary judgment dismissing the complaint against it and granted the motion of defendants Rochester General Hospital and Rochester Regional Health for summary judgment dismissing the complaint against them. We reject plaintiffs' contention that Supreme Court erred in granting the motions, and we therefore affirm.
In moving for summary judgment in a medical malpractice action, a defendant has "the initial burden of establishing either that there was no deviation or departure from the applicable standard of care or that any alleged departure did not proximately cause the plaintiff's injuries" (Occhino v Fan, 151 AD3d 1870, 1871 [4th Dept 2017] [internal quotation marks omitted]; see Isensee v Upstate Orthopedics, LLP, 174 AD3d 1520, 1521 [4th Dept 2019]). We conclude that defendants met their initial burden on their respective motions with respect to both issues and, thus, "the burden shifted to plaintiffs to raise triable issues of fact by submitting an expert's affidavit both attesting to a departure from the accepted standard of care and that defendants' departure from that standard of care was a proximate cause of the injur[ies]" (Isensee, 174 AD3d at 1522; see Bubar v Brodman, 177 AD3d 1358, 1359 [4th Dept 2019]).
Even assuming, arguendo, that plaintiffs raised triable issues of fact with respect to whether defendants deviated from the accepted standard of care, we conclude that the opinion of plaintiffs' expert neurologist with respect to the issue of proximate cause was insufficient to defeat defendants' motions for summary judgment (see Diaz v New York Downtown Hosp., 99 NY2d 542, 544 [2002]; Occhino, 151 AD3d at 1871). Plaintiffs' expert acknowledged that, to be effective, intravenous immunoglobulin therapy must be commenced within a certain time of the onset of GBS symptoms, and it is undisputed that, in this case, the therapy was commenced [*2]within that time.
Like the dissent, we acknowledge that plaintiffs' theory of causation is predicated on the allegation that defendants' failure or delay in diagnosing plaintiff's GBS "diminished [her] chance of a better outcome" (Clune v Moore, 142 AD3d 1330, 1331 [4th Dept 2016]). Nothing in our decision herein calls into question the viability of such a theory. The Court of Appeals, however, has instructed that when an expert "states his [or her] conclusion unencumbered by any trace of facts or data, [the] testimony should be given no probative force whatsoever" (Romano v Stanley, 90 NY2d 444, 451 [1997] [internal quotation marks omitted]; see Amatulli v Delhi Constr. Corp., 77 NY2d 525, 533 n 2 [1991]), and, in this case, as noted above, the opinion of plaintiffs' expert that treatment should have been started sooner was contrary to what the expert agreed was appropriate. We therefore conclude that plaintiffs' expert offered only conclusory and speculative assertions that earlier detection and treatment would have produced a different outcome (see Martingano v Hall, 188 AD3d 1638, 1640 [4th Dept 2020], lv denied 36 NY3d 912 [2021]), and assertions that are "vague, conclusory, speculative, and unsupported by the medical evidence in the record" are insufficient to raise a triable issue of fact (Occhino, 151 AD3d at 1871 [internal quotation marks omitted]; see Jackson v Montefiore Med. Center/The Jack D. Weiler Hosp. of the Albert Einstein Coll. of Medicine, 146 AD3d 572, 572 [1st Dept 2017]; Longtemps v Oliva, 110 AD3d 1316, 1319 [3d Dept 2013]; Bullard v St. Barnabas Hosp., 27 AD3d 206, 206 [1st Dept 2006]).
All concur except Curran, J., who dissents and votes to reverse in accordance with the following memorandum: I respectfully dissent and would reverse the order and deny defendants' motions for summary judgment dismissing the complaint against them. Although I agree with the majority's tacit conclusion that plaintiffs' submissions, particularly the detailed 44-page affirmation of their expert neurologist, raised triable questions of fact with respect to defendants' deviation from the good and accepted standard of care (see generally Fargnoli v Warfel, 186 AD3d 1004, 1005 [4th Dept 2020]), I disagree with the majority's express conclusion that the expert neurologist's affirmation did not raise a question of fact with respect to proximate cause.
As acknowledged by the majority, this appeal implicates the "loss of chance" theory of proximate causation that applies in delayed-diagnosis medical malpractice actions where the allegations are predicated on an "omission" theory of negligence (Wild v Catholic Health Sys., 85 AD3d 1715, 1717 [4th Dept 2011], affd 21 NY3d 951 [2013]; see Stradtman v Cavaretta [appeal No. 2], 179 AD3d 1468, 1471 [4th Dept 2020]; Clune v Moore, 142 AD3d 1330, 1331-1332 [4th Dept 2016]; Wolf v Persaud, 130 AD3d 1523, 1525 [4th Dept 2015]; Gregory v Cortland Mem. Hosp., 21 AD3d 1305, 1306 [4th Dept 2005]; Cannizzo v Wijeyasekaran, 259 AD2d 960, 961 [4th Dept 1999]; see generally 1B NY PJI3d 2:150 at 47, 82-86 [2021]). In such cases, proximate cause is not analyzed under the ordinary "substantial factor" approach (PJI 2:70), but rather according to whether the alleged delay in diagnosis diminished the plaintiff's "chance of a better outcome or increased the injury" (Wolf, 130 AD3d at 1525). Although I have expressed concern "that a loss of chance concept reduces a plaintiff's burden of proof on the element of proximate cause" (Humbolt v Parmeter, 196 AD3d 1185, 1194 [4th Dept 2021, Curran, J., dissenting]), the majority and I agree that this Court has nonetheless adopted that causation standard in this type of medical malpractice action.
The majority makes no attempt to distinguish the expert opinion presented here from similar expert opinions on causation we previously reviewed and found sufficient. Plaintiffs correctly observe that their expert's analysis of the issue of causation is very similar to the opinion offered by the plaintiff's expert in Clune, in which we concluded that the defendants were not entitled to judgment as a matter of law pursuant to CPLR 4401 inasmuch as the plaintiff presented legally sufficient evidence on the issue of causation (see 142 AD3d at 1331-1332). In my view, the facts supporting plaintiffs' theory of causation, as articulated by their expert, are largely indistinguishable from the expert testimony in Clune. There, the plaintiff's decedent allegedly suffered a bowel perforation during a colonoscopy, which resulted in peritonitis that ultimately caused his death (see Clune v Moore, 45 Misc 3d 427, 428-430 [Sup Ct, Erie County 2014]). The plaintiff's expert testified with respect to causation that the decedent's chance of "survival would [have] increase[d] 'the earlier in time or the closer in time that you catch a [medical problem] and are able to treat a [medical problem]' " (Humboldt, 196 AD3d at 1193 [Curran, J., dissenting]). In other words, had the bowel perforation been diagnosed sooner, the outcome would have been better for the decedent. In Clune, therefore, the defendants' delay in [*3]diagnosing the bowel perforation was the deviation that provided the causative effect resulting in death—i.e., the diminished opportunity for a better outcome for the decedent.
Here, although defendants commenced administering intravenous immunoglobulin therapy to Karen S. Simko (plaintiff) within the time frame by which the standard of care for Guillain-Barré Syndrome (GBS) is measured, that does not change the fact that plaintiffs' expert opined that defendants' delay in diagnosing plaintiff with GBS nonetheless deprived her of "a substantial possibility she would have had less injury to her nervous system and less complication[s] cause[d] thereby, recovered quicker, and had less permanent deficits" due to GBS. The expert also stated that, had the intravenous immunoglobulin therapy been administered earlier, "the neutralization of the attack antibodies would have begun immediately . . . and cessation of nerve damage would have begun" and that "[o]nce you stop the damage to the nerves you stop the sensory and motor loss at that point." Thus, even though defendants began therapy to treat plaintiff's GBS in time to be effective, plaintiffs' expert still raised an issue of fact whether defendants' failure to diagnose the GBS sooner diminished plaintiff's chance of a better outcome or increased the injuries she ultimately sustained. Ultimately, in light of the foregoing, "[w]hether a diagnostic delay affected [plaintiff's] prognosis is . . . an issue that should be presented to a jury" (Wiater v Lewis, 197 AD3d 782, 784 [2d Dept 2021]).
Entered: November 19, 2021
Ann Dillon Flynn
Clerk of the Court