Mylar v Niagara Falls Mem. Med. Ctr. (2025 NY Slip Op 00538)

Mylar v Niagara Falls Mem. Med. Ctr.

2025 NY Slip Op 00538

Decided on January 31, 2025

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on January 31, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., CURRAN, BANNISTER, MONTOUR, AND DELCONTE, JJ.

584 CA 23-01544

[*1]JACKIE MYLAR, AS POWER OF ATTORNEY FOR TEAIRRA MASON, PLAINTIFF-RESPONDENT,
v
NIAGARA FALLS MEMORIAL MEDICAL CENTER, ET AL., DEFENDANTS, FDR MEDICAL SERVICES AND LEE CHALUPKA, M.D., DEFENDANTS-APPELLANTS. 

GIBSON, MCASKILL & CROSBY, LLP, BUFFALO (MELISSA L. ZITTEL OF COUNSEL), FOR DEFENDANTS-APPELLANTS.
BROWN CHIARI LLP, BUFFALO (COLLEEN P. FAHEY OF COUNSEL), FOR PLAINTIFF-RESPONDENT. 

 Appeal from an order of the Supreme Court, Niagara County (Frank Caruso, J.), entered August 18, 2023. The order, insofar as appealed from, denied in part the motion of defendants FDR Medical Services and Lee Chalupka, M.D., for summary judgment. 
It is hereby ORDERED that the order so appealed from is affirmed without costs.
Memorandum: On January 16, 2012, 13-year-old Teairra Mason presented at the emergency department at defendant Niagara Falls Memorial Medical Center (hospital), accompanied by plaintiff, her mother, complaining of bilateral eye pain that was constant and burning in nature, with a pain level of 8 out of 10. Plaintiff informed staff at the hospital that Mason had experienced a three-week history of eye redness that had started in her left eye and progressed to the right eye. Indeed, Mason had already been diagnosed with pink eye and was being treated with an increasing dose of eye drops. Mason's vision had deteriorated to the point that she was walking into walls. Nursing staff at the hospital observed that Mason had significantly decreased vision, was experiencing drainage from her right eye, and reported visual changes and blurred vision.
While at the emergency room, defendant Lee Chalupka, M.D., evaluated Mason and also diagnosed her with conjunctivitis, i.e., pink eye. Following her examination, Chalupka, according to her deposition testimony, informed Mason and plaintiff that Mason needed to be seen by an ophthalmologist the next day. Plaintiff disputes that this verbal communication occurred. It is undisputed, however, that plaintiff received after-care instructions from the hospital's emergency department listing the name, address, and telephone number of an ophthalmologist, with instructions to call the next day to schedule an appointment. It is equally undisputed that Chalupka herself never called an ophthalmologist on Mason's behalf.
Ultimately, Mason was not seen by an ophthalmologist until February 6, 2012, at which time she was diagnosed with a serous retinal detachment in her left eye. Within a month, she also sustained a retinal detachment in her right eye. Eventually, Mason suffered permanent, complete blindness in her left eye and severely limited vision in her right eye and was diagnosed with the rare autoimmune disorder Vogt-Koyanagi-Harada disease (VKH).
Thereafter, plaintiff, individually and as power of attorney for Mason, commenced this action against, among others, Chalupka and her employer, defendant FDR Medical Services (collectively, defendants), asserting a single cause of action for medical malpractice, which included, but was not limited to, defendants' "failure to properly and timely diagnose . . . [*2][Mason's] eye condition," which allegedly resulted in Mason's injuries. Defendants moved for summary judgment dismissing the complaint and all cross-claims against them. Supreme Court granted the motion in part by dismissing the cause of action insofar as it was asserted by plaintiff, individually, and otherwise denied the motion. Defendants appeal from the order to the extent that it denied the motion and we affirm.
"[A] defendant moving for summary judgment in a medical malpractice action has the [initial] burden of establishing the absence of any departure from good and accepted medical practice or that the plaintiff was not injured thereby" (Bubar v Brodman, 177 AD3d 1358, 1359 [4th Dept 2019] [internal quotation marks omitted]; see Campbell v Bell-Thomson, 189 AD3d 2149, 2150 [4th Dept 2020]). "To meet that burden, a defendant must submit in admissible form factual proof, generally consisting of affidavits, deposition testimony and medical records, to rebut the claim of malpractice by establishing that [the defendant] complied with the accepted standard of care or did not cause any injury to the patient" (Edwards v Myers, 180 AD3d 1350, 1352 [4th Dept 2020] [internal quotation marks omitted]; see Groff v Kaleida Health, 161 AD3d 1518, 1520 [4th Dept 2018]).
" '[T]he burden shifts to the plaintiff to demonstrate the existence of a triable issue of fact only after the defendant . . . meets the initial burden . . . , and only as to the elements on which the defendant met the prima facie burden' " (Bubar, 177 AD3d at 1359).
Defendants contend that the court erred in failing to dismiss the complaint in its entirety, because they met their initial burden on the motion and plaintiff failed to raise a triable issue of fact in opposition with respect to the element of proximate cause. We reject that contention. We conclude that defendants failed to meet their initial burden on the motion with respect to proximate cause inasmuch as they did not establish, as a matter of law, that their alleged negligence by omission was not a substantial factor in depriving Mason of a substantial possibility of a better outcome (see Simko v Rochester Gen. Hosp., 199 AD3d 1408, 1409 [4th Dept 2022]; Clune v Moore, 142 AD3d 1330, 1331-1332 [4th Dept 2016]; Wolf v Persaud, 130 AD3d 1523, 1525 [4th Dept 2015]; see generally PJI 2:150.1; 1B NY PJI3d 2:150, at 91-96 [2024]). The main theory of causation alleged by plaintiff in this case is that defendants negligently caused Mason to lose a substantial chance of a better outcome, inasmuch as Chalupka failed to directly contact the recommended ophthalmologist herself, and instead indirectly relied on plaintiff's compliance with the after-care instructions to call for an appointment. Plaintiff further alleges that Chalupka's erroneous initial diagnosis of conjunctivitis during the emergency room visit caused Mason to lose a chance of a better outcome because it minimized the urgency of calling the ophthalmologist. Specifically, according to plaintiff, Chalupka's diagnosis was of such a non-emergent condition that even had plaintiff herself contacted the ophthalmologist in conformance with the after-care instructions, that act would not have resulted in an urgent response by the specialist's office sufficient to provide her with a better chance. In short, plaintiff's allegation is essentially that only Chalupka's direct contact with the specialist about Mason's condition would have ensured that Mason received an immediate appointment, resulting in a substantial chance of a better outcome (see Wild v Catholic Health Sys., 85 AD3d 1715, 1717 [4th Dept 2011], affd 21 NY3d 951 [2013]; Simko, 199 AD3d at 1409; Clune, 142 AD3d at 1331-1332).
In support of the motion, defendants submitted the affirmations of two expert witnesses, an emergency medicine physician and a pediatric ophthalmologist. We conclude that defendants did not meet their initial burden through reliance on the emergency medicine physician's affirmation, inasmuch as that expert "mentioned causation only in a fleeting and conclusory manner" (Fargnoli v Warfel, 186 AD3d 1004, 1005 [4th Dept 2020]). Similarly, defendants did not meet their initial burden through reliance on the pediatric ophthalmologist's affirmation inasmuch as that expert merely conclusorily asserted that there was "no causal connection" or "no causal relationship" between Chalupka's emergency room treatment of Mason and her resulting injuries. Such conclusory statements are insufficient for defendants to carry their burden on the motion with respect to proximate cause (see Heinrich v Serens, 217 AD3d 1320, 1324 [4th Dept 2023]; Fargnoli, 186 AD3d at 1005). Specifically, we note that, in his affirmation, the pediatric ophthalmologist opined that "there is no causal relationship between [Chalupka's] proper and thorough evaluation and recommendations . . . and [Mason's] alleged injuries from VKH." That assertion, however, sheds no light on the issue of causation here because it assumes—at all times—that Chalupka's treatment of Mason was not negligent. The expert's burden here was to show "that, even if [Chalupka] was negligent, [her] negligence was [*3]not a proximate cause of the [injuries]" (Pagels v Mullen, 167 AD3d 185, 187 [4th Dept 2018]; see e.g. Stefanski v Huntress, 224 AD3d 1362, 1363 [4th Dept 2024]; Burnett v Allen, 218 AD3d 1190, 1191 [4th Dept 2023]). However, by assuming that Chalupka's treatment and diagnosis of Mason was correct in every respect, the pediatric ophthalmologist's opinion that any delay in directly contacting the specialist did not have any significant impact on the outcome is conclusory inasmuch as it assumes that Mason was not suffering from an emergent condition—i.e., VKH—at the time of the emergency room visit. Therefore, the pediatric ophthalmologist's affirmation failed to establish that the "alleged departure did not proximately cause . . . [Mason's] injuries" (Simko, 199 AD3d at 1409 [emphasis added]; see generally Heinrich, 217 AD3d at 1321-1322, 1324).
Because defendants failed to meet their initial burden on the motion with respect to proximate cause, the burden never shifted to plaintiff with respect to that element, and denial of the motion was required "regardless of the sufficiency of the opposing papers" (Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]; see Harbinger v Kato, 221 AD3d 1510, 1511 [4th Dept 2023]; Heinrich, 217 AD3d at 1324). We have considered defendants' remaining contentions and conclude that none warrants reversal or modification of the order.
All concur except Smith, J.P., and Montour, J., who dissent and vote to reverse the order insofar as appealed from in accordance with the following memorandum: We respectfully dissent and would reverse the order insofar as appealed from, grant the motion in its entirety, and dismiss the complaint against defendants FDR Medical Services and Lee Chalupka, M.D. (collectively, defendants). We disagree with the majority's conclusion that defendants failed to meet their initial burden on the motion on the issue of proximate cause.
"On a motion for summary judgment in a medical malpractice action, a defendant has the initial burden of establishing either that there was no deviation or departure from the applicable standard of care or that any alleged departure did not proximately cause the plaintiff's injuries" (Lewis v Sulaiman, 217 AD3d 1443, 1444 [4th Dept 2023] [internal quotation marks omitted]). "Once a defendant meets the initial burden, the burden shifts to the plaintiff to demonstrate the existence of a triable issue of fact . . . only as to the elements on which the defendant met the prima facie burden" (id. [internal quotation marks omitted]). Generally, a medical malpractice defendant meets their initial burden "by presenting factual proof, generally consisting of affidavits, deposition testimony and medical records, to rebut the claim of malpractice by establishing that [they] complied with the accepted standard of care or did not cause any injury to the patient" (Pasek v Catholic Health Sys., Inc., 186 AD3d 1035, 1036 [4th Dept 2020] [internal quotation marks omitted]).
Initially, we agree with the majority that plaintiff's theory of causation is that defendants negligently caused Teairra Mason to lose a substantial chance of a better outcome. Plaintiff's contention is premised on Chalupka's failure to contact the recommended ophthalmologist and decision to rely, instead, on plaintiff's compliance with the after-care instructions to contact the ophthalmologist the next day for an emergency appointment and on Chalupka's diagnosis of conjunctivitis. The majority concludes, however, that defendants failed to meet their burden on the element of proximate cause because the affirmations of the emergency medical physician and the pediatric ophthalmologist only conclusorily asserted that there was no causal connection between Chalupka's treatment of Mason and her resulting injuries. We reject the majority's conclusion. Although the pediatric ophthalmologist opined that there was "no causal relationship between [Chalupka's] proper and thorough evaluation and recommendations . . . and [Mason's] alleged injuries from" Vogt-Koyanagi-Harada (VKH) disease (emphasis added), he also explicitly opined on Chalupka's failure to reach out to the specialist to schedule a next-day appointment. According to the expert, "even if [Chalupka] had contacted [the specialist's] after-hours service . . . while the patient was in the emergency department, the patient likely would not have been seen by [the specialist] or any ophthalmologist until the next day at the earliest given the circumstances, including the chronicity of the patient's condition, her vision on the evening of [her emergency department visit], her visual acuity of 20/200, the normal fundoscopic exam and the normal fluorescein exam. The alleged delay of one day that would have occurred if the patient had seen an ophthalmologist the next day as [Chalupka] directed, would not have had and did not have any significant impact on the outcome." Further, in response to plaintiff's contention that Chalupka's initial diagnosis of conjunctivitis lulled her into believing that this was not an urgent condition, defendants submitted evidence that Chalupka informed plaintiff [*4]"that there were a number of concerning features in [Mason's] presentation, that [Chalupka] was concerned about [Mason's] visual acuity and about her pain," and that Mason's symptoms were "beyond what an emergency medicine physician was going to be able to treat her for." Chalupka told plaintiff that Mason "needed to see the ophthalmologist the next day" and, when plaintiff appeared "frustrated or . . . annoyed," Chalupka discussed with her "why it was important for [Mason] to see an ophthalmologist because conjunctivitis, in and of itself, does not cause a decrease in . . . vision" or typically cause the pain described by Mason, or last for three weeks. Chalupka explicitly informed plaintiff that she "did not think that this was a simple conjunctivitis."
On this record, we would conclude that defendants met their initial burden on the issues of deviation from the applicable standard of care and proximate cause, and thus the burden shifted to plaintiff to raise triable issues of fact by submitting an expert's affidavit "attesting to a departure from the accepted standard of care and that defendants' departure from that standard of care was a proximate cause of the injur[ies]" (Stradtman v Cavaretta [appeal No. 2], 179 AD3d 1468, 1470 [4th Dept 2020] [internal quotation marks omitted]; see generally Alvarez v Prospect Hosp., 68 NY2d 320, 324-325 [1986]). Here, even assuming, arguendo, that plaintiff raised a triable issue of fact with respect to Chalupka's departure from the accepted standard of care, we would conclude that plaintiff failed to raise a triable issue of fact with respect to proximate cause. Although plaintiff submitted the affidavit of a pediatric emergency room physician, the expert did not explain how an earlier referral would have altered the outcome in this case (see Poblocki v Todoro, 49 AD3d 1239, 1240 [4th Dept 2008]). Rather, the expert, in conclusory form, merely speculated that Chalupka's alleged deviations from the applicable standard of care contributed to Mason's injuries, and thus the affidavit was insufficient to raise a triable issue of fact with respect to proximate cause (see Humbolt v Parmeter, 196 AD3d 1185, 1188 [4th Dept 2021]; Mosezhnik v Berenstein, 33 AD3d 895, 897 [2d Dept 2006]; see generally Pigut v Leary, 64 AD3d 1182, 1183 [4th Dept 2009]).
Entered: January 31, 2025
Ann Dillon Flynn
Clerk of the Court